UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STANLEY STEVEN ENGLISH AND GINNY ENGLISH | CIVIL ACTION |
| VERSUS | NO: 10-4419 |
| APACHE CORPORATION | SECTION: "J" (5) |

**ORDER AND REASONS**

Before the Court is Defendant's **Motion for Summary Judgment (Rec. Doc. 43)** and Plaintiffs' **Opposition to Motion for Summary Judgment (Rec. Doc. 65)**, on supporting memoranda, without oral argument.  Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that Defendant's Motion for Summary Judgment (Rec. Doc. 43) should be GRANTED.

**PROCEDURAL HISTORY AND BACKGROUND FACTS:**

Defendant Apache Corporation ("Apache") is an oil and gas exploration and production company that owns and operates platforms in the Gulf of Mexico, in both state and federal waters. Apache sub-contracts with Linear Controls, Inc. ("Linear"), which specializes in the maintenance and repair of

1

instruments, gauges, compressors, control valves, meters, electronics, computers, and other items necessary to the functionality of the platforms. Apache and Linear entered into a Master Service Contract ("MSC') dated September 11, 2002.  On October 11, 2007, the MSC was amended via "Exhibit E" and a related Letter Agreement, which anticipate the potential application of Louisiana law, most notably the Louisiana Workers' Compensation Act (LWCA).  The amendment acknowledges that Linear's work for Apache is an integral part of and essential to Apache's ability to generate its goods, products, and services; and that Apache is deemed the statutory employer of Linear's employees in the performance of work under the MSC:

> In all cases where Contractor's [Linear's] employees . . . are covered by the Louisiana Workers Compensation Act, La. Rev. State. [sic] §§ 23:1021, et seq., Company [Apache] and Contractor acknowledge and agree that all Work and operations performed by Contractor and its subcontractors and their employees pursuant to this Contract are an integral part of and are essential to the ability of Company to generate Company's good [sic], products or services. Without limiting any of the provisions set forth in the Contract, Company and Contractor agree that Company is and shall be deemed to be a statutory employer of Contractor's employees and its subcontractor's employees for the sole purposes of La. Rev. Stat. § 23-1061(A)(3), as the same may be amended from time to time.

On the morning of September 27, 2010, Linear employee and Plaintiff Steven English participated in a shift change on the

2

Apache fixed platform at issue, Main Pass 69-G.  Plaintiff met
with Mr. Lois Langlinais (whom Plaintiff was to replace) and
Apache Assistant Foreman Ernest Russell; the three discussed
Plaintiff's orientation to work on the platform.  Mr. Langlinais
took Plaintiff on a tour of the platform in order to familiarize
him with the layout of the platform and showed him the work that
needed to be performed, including the relocation of a gas line.
The two men then headed toward an operation shack to fill out a
job safety analysis.  At this time, Plaintiff's foot was
allegedly caught on some aspect of the platform's deck; he fell
and was injured.  The amended MSC was in effect on the date of
the incident.

      Plaintiff  has filed a workers' compensation claim against
Linear[1] and has received benefits.  Plaintiffs have filed the
instant lawsuit against Apache, seeking damages resulting from
the alleged disabling injury that resulted from the fall on the
platform.[2]  Defendant moved for summary judgment.  The issue is
whether Defendant qualifies for the tort immunity that emanates
from classification as Plaintiff's statutory employer under

---

[1] Defendant does not clearly allege with whom the claim was filed, but
Plaintiff in opposition asserts that Longshore Act benefits have been paid.

[2] Plaintiff Steven English's wife, Ginny English, sues for "damages,
including, but not limited to, loss of consortium, loss of society and loss of
services."  Rec. Doc. 1, at 2.

3

Louisiana workers' compensation law.

**THE PARTIES' ARGUMENTS:**

Defendant argues that there is no genuine issue of material fact as to its liability and that it is entitled to summary judgment on the issue of LWCA statutory employer immunity. Defendant asserts entitlement to the exclusive remedy protections of the LWCA, and resultant dismissal of Plaintiffs' case.

Defendant asserts that the fixed platform upon which Plaintiff was injured is located in state waters immediately off the coast of Louisiana.  It argues that Louisiana law, and in particular the LWCA, applies.  The Act grants a party classified as a "principal," who also meets the definition of a "statutory employer," the exclusive workers' compensation remedy protection. Such a statutory employment relationship is presumed when a written contract between the principal and the contractor recognizes it. This presumption may be overcome only by a showing that "the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services."  LA. REV. STAT. ANN. § 23:1061(A)(3).

Defendant argues that in this case the MSC is a written contract that recognizes the statutory employment relationship

between Defendant Apache and Linear's employees.  Thus, Defendant
argues the presumption of a statutory employment relationship
cannot be overcome insofar as  "[a]lmost every aspect of every
system on Apache's platforms are thus dependent on Linear's work
as an integral part of and essential to Apache's ability to
operate its platforms in the production and transportation of oil
and gas."  Rec. Doc. 43-1, at 7.  The specific activities in
which Plaintiff was engaged were necessary to ensure Apache's
platform's functionality; Plaintiff needed orientation to be able
to perform maintenance and repair work.  Moreover, Defendant adds
that the Louisiana courts liberally interpret what activities are
considered integral to a principal's trade, such that the
principal is considered a statutory employer.  In the end,
Defendant argues that there are no material facts in dispute and
that it is fully entitled to the exclusive remedy protections of
the LWCA because Plaintiff cannot overcome the presumption that
Apache was his statutory employer.

    In opposition, Plaintiffs claim that Apache is not entitled
to summary judgment because Apache is not Plaintiff's statutory
employer.  They initially argue that the contract's own terms
choose general maritime, not Louisiana, law.  Plaintiffs argue
that the MSC amendment of October 11, 2007 did not change the

parties' original choice of general maritime law.  Plaintiffs
point to an alleged ambiguity in the amended contract:  the
amendment expresses nothing concerning the plenary choice of
general maritime law.  They ask that this ambiguity be construed
against Apache as the drafter of the contract so that the state
law tort immunity will not apply.

Their next argument is that Mr. English is not covered by
the state act.  They invoke a portion of the LWCA that forbids
state compensation payment to any employee covered by the
Longshore and Harbor Workers' Compensation Act (LHWCA).  They
contend that because Plaintiff elected and is receiving LHWCA
benefits, he is prohibited from coverage under the LWCA.  Because
Mr. English is not covered by the LWCA, and because the MSC
provides that Apache is his statutory employer only if he is
covered by the LWCA, Defendant Apache is not his statutory
employer.  Plaintiffs also argue that to the extent the MSC
purports to make Apache a statutory employer, the provision is
null because Apache secures the benefits of statutory employment
without any of the attendant responsibility.  Namely, because the
MSC requires Linear to bear the full cost of workers'
compensation insurance and to indemnify Apache, the MSC

impermissibly purports to eliminate the solidary liability of employers for workers' compensation obligations.

Lastly, Plaintiffs argue that Apache does not qualify as Mr. English's statutory employer because at the time of his accident, he was not performing work that is essential or integral to Apache's line of business.  He was on his way to a pre-job safety meeting; job safety is not integral or essential to the generation of particular goods, products, or services.  Moreover, Mr. English was merely preparing to install a clamp, a minor task that is not essential or integral to Apache's ability to explore for or produce oil and gas.

**DISCUSSION:**

**A. Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in

the record but refrains from making credibility determinations or weighing the evidence."  Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions.  Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d 399.

    If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."  Id. at 1265.

    If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may

8

satisfy its burden by merely pointing out that the evidence in
the record is insufficient with respect to an essential element
of the nonmoving party's claim.  See Celotex, 477 U.S. at 325.
The burden then shifts to the nonmoving party, who must, by
submitting or referring to evidence, set out specific facts
showing that a genuine issue exists.  See id. at 324.  The
nonmovant may not rest upon the pleadings, but must identify
specific facts that establish a genuine issue for trial.  See,
e.g., id. at 325; Little, 37 F.3d at 1075.

**B. Applicable Substantive Law**

The first issue in resolving the motion is the applicable
law, namely, whether Louisiana's LWCA applies.  This is a
dispositive issue because the entire basis for Defendant's motion
is that a statutory employer defense is available under Louisiana
law.

**1. The MSC Choice-of-Law Clause**

The Court is not persuaded by Plaintiffs' argument that the
MSC between Apache and Linear effectively selects federal
maritime law to apply to the exclusion of Louisiana state law.
Plaintiffs makes a pointed effort to argue that the MSC has a
valid choice-of-law clause that selects general maritime law,

9

which would not provide Apache with a state law statutory

employer defense.  However, this argument is erroneous.  The

issue of statutory employer status under the LWCA is one of *tort*

immunity.  <u>Brown v. Cities Serv. Oil Co.</u>, 733 F.2d 1156, 1160

(5th Cir. 1984).  Although a contractual choice of law is valid

as to contractual issues arising from that agreement, the choice-

of-law clause may not select the law to govern a matter sounding

in tort.[3]  In this case, the issue is not a contractual dispute

between Apache and Linear, but whether Apache is immune from tort

liability to Linear's employee, Plaintiff Steven English.[4]

Further, the alleged choice of maritime law clearly does not even

reach the present issue of tort immunity.  By its terms, the

contractual provision only states that "the *contract* shall be

_____

[3] Plaintiffs have invoked subject matter jurisdiction based on diversity grounds, Rec. Doc. 1, at 1, and a federal court sitting in diversity must apply the conflict-of-law rules of the state in which the court sits.  <u>Klaxon Co. v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487, 496 (1941).  Louisiana's conflict-of-law rule provides that where contracting parties select a particular state's law, "*issues of conventional obligations [i.e., contracts]* are governed by the law expressly chosen . . . by the parties."  La. Civ. Code art. 3540 (emphasis added).  Therefore an issue of *tort*, rather than of contract, may not be the subject of a contractual choice of law.

[4] In any case, the MSC putatively selects Louisiana law to govern the issue.  While true that the MSC states that it is to be construed and enforced in accordance with general maritime law, Rec. Doc. 43-7, at 2, the Exhibit "E" amendment to the MSC expressly incorporates the LWCA.  Rec. Doc. 43-7, at 7.  Contrary to Plaintiffs' assertion, this contractual amendment expressly selects Louisiana law to the extent that work is performed within Louisiana or its territorial waters.  The very nature of a contractual amendment is to *expressly* change the law between the parties; therefore, as to work that is performed within territorial waters, the Letter Agreement putatively chooses Louisiana law.  <u>See</u> Letter Agreement and Exhibit "E," Rec. Doc. 43-7, at 6-7.

construed and enforced" according to federal maritime law.  Rec.
Doc. 43-7, at 2 (emphasis added).  Therefore, the MSC of its own
force does not determine whether state law applies.

**2. LHWCA Versus LWCA Coverage**

The applicable law is determined based on whether Main Pass
69-G is located in federal or state waters.  If the fixed
platform lies within state waters, then state law may apply.  See
43 U.S.C. § 1301(b) (defining state boundaries as extending to
three marine leagues into the Gulf of Mexico).  Initially, in
their complaint, Plaintiffs stated that the platform is located
on the Outer Continental Shelf.  Rec. Doc. 1.  However, post-
discovery, it appears that the parties both agree that the
platform is located within territorial waters.[5]  Therefore,
because Plaintiff's accident occurred on a fixed platform within
Louisiana territorial waters, he would be covered by Louisiana's
workers' compensation regime unless either (a) Plaintiff

---

[5] Defendant's supporting memorandum states, "Contrary to Plaintiff's
assertion in his Complaint, the fixed platform upon which he claims he was
injured is located in State waters immediately off the coast of Louisiana, not
in federal waters."  Rec. Doc. 43-1, at 5.  Indeed, as noted, Plaintiffs'
complaint stated in passing that the platform is located on the Outer
Continental Shelf.  However, Plaintiffs' opposition memorandum does not even
mention the issue.  Additionally, Defendant's motion for summary judgment
contains a "Statement of Uncontested Facts" (Rec. Doc. 43-2), which states
that the platform is situated in Louisiana state waters.  That fact is
numbered "2," and Plaintiffs' responsive "Controversion of Statement of
Uncontested Material Facts" states that fact number "2" is uncontested.  Rec.
Doc. 65-1, at 1.

qualifies as a seaman, <u>Dupre v. Otis Eng'g Corp.</u>, 641 F.2d 229, 231 (5th Cir. 1981) (citing LA. REV. STAT. § 23:1037), or (b) he meets the status and situs requirements of the LHWCA, <u>see</u> <u>Brown v. Avondale Indus., Inc.</u>, 617 So. 2d 482 (La. 1993).  Plaintiff argues that he is covered by the LHWCA, and thus the LWCA by its terms does not apply to this case.

Plaintiffs cite the LWCA, which provides in pertinent part:

> No compensation shall be payable in respect to the disability or death of any employee covered by the Federal Employer's Liability Act, the Longshoremen's and Harbor Worker's Compensation Act, or any of its extensions, or the Jones Act.

LA. REV. STAT. ANN. § 23:1035.2.  Indeed, under this express statutory language, *if* the Plaintiff in this case is *covered* by the LHWCA, he may not seek LWCA benefits.  But this raises a crucial question:  even if the state workers' compensation statute cannot apply where the Plaintiff is covered by the LHWCA, how is such LHWCA coverage established?  The answer is unsettled. <u>See</u> H. ALSTON JOHNSON, III, WORKERS' COMPENSATION LAW AND PRACTICE, § 411, *in* 14 LOUISIANA CIVIL LAW TREATISE (Westlaw 2010) ("[W]hat is unclear is how this coverage is to be established.").  The mere fact that Plaintiff in this case has elected and received LHWCA benefits does not mean that he is *actually* an LHWCA-covered employee.

12

The text of § 23:1035.2 does not clearly indicate whether the LWCA could apply in a case like the one at bar—one in which the Plaintiff has received LHWCA benefits.  However, Plaintiff cites Louisiana Supreme Court precedent that seems to interpret the statute to be a complete bar to the application of the state LWCA where the plaintiff has elected to receive federal LHWCA benefits.  In Brown v. Avondale Industries, Inc., 617 So. 2d 482, 482 (La. 1993), the Louisiana Supreme Court issued the following one-paragraph, per curiam opinion:

> The injured employee received worker's compensation benefits under 33 U.S.C. § 905(a), the Longshore and Harbor Workers' Compensation Act, during the time of concurrent jurisdiction with the Louisiana Worker's Compensation Act.  Because the employee elected benefits under the federal Act, the state Act was not implicated.  Defendant, even if it would be a statutory employer under the state Act, cannot claim the tort immunity provided to principals by that Act, because the conflicting provisions of the federal Act selected by the employee control.

Id.  The Louisiana Supreme Court thus concluded that where the injured employee elects to pursue LHWCA benefits, the LWCA is not implicated, and thus there is no possibility that a party can claim statutory employer status under the LWCA.  The Fifth Circuit cited Brown in reaching a similar result.  Charles v. U.S., 15 F.3d 400 (5th Cir. 1994).  In Charles, the court found that Louisiana law no longer provides statutory immunity to an

employer in a case where its employee has elected to receive LHWCA benefits.  Id. at 402.

Still, Brown and Charles do not clearly indicate that Defendant Apache is prevented from asserting statutory employer tort immunity.  As noted previously, § 23:1035.2 of the LWCA does not clearly indicate whether, as in this case, LHWCA coverage is established merely because an injured employee has elected to receive LHWCA benefits.  Arguably, Linear may have chosen to pay benefits to Plaintiff by mistake, i.e., just because LHWCA benefits were paid does not mean that Plaintiff is actually covered.  In fact, the Court has previously used such reasoning to distinguish Brown and Charles.  In Kerr v. Smith Petroleum Co., 909 F. Supp. 421, 424 (E.D. La. 1995), the Court found Brown inapplicable because its underlying facts showed that the plaintiff was entitled to elect LHWCA benefits as a vessel worker.  In Kerr, where the plaintiff was not working on a vessel and was not working on the Outer Continental Shelf, the statutory employer defense was still available.  Id. at 424-25.  The Court further distinguished Charles, in which there was no dispute that the plaintiff was entitled to LHWCA benefits—he was a shipbuilder.  Id. at 424 n.7.

14

Under <u>Kerr</u>'s rationale, <u>Brown</u> and <u>Charles</u> are
distinguishable from the present case, as well.  Although the
parties do not address the issue in their supporting memoranda,
Plaintiff clearly is not a covered employee under the LHWCA and
thus is not precluded from seeking a state workers' compensation
recovery.  For an employee to be covered by the LHWCA, he must
meet the "situs" and "status" tests.  <u>Herb's Welding, Inc. v.
Gray</u>, 470 U.S. 414, 415-16 (1985).  In <u>Miles v. Delta Well
Surveying Corp.</u>, 777 F.2d 1069, 1070 (5th Cir. 1985), the Fifth
Circuit held that where an employee worked on a fixed offshore
gas installation within territorial waters, he failed the situs
test because he was not working on the continental shelf, and he
also failed the status test because his cleaning and maintenance
work on the installation did not qualify as "maritime
employment."  The U.S. Supreme Court in <u>Herb's Welding</u> found that
offshore drilling activity on a fixed platform in state waters,
including tasks essential to such activity, are not "maritime
employment" and thus fail the "status" prong.  <u>Herb's Welding</u>,
470 U.S. at 421.  Plaintiff's employment as a provider of
maintenance and repair services related to offshore drilling on
Main Pass 69-G clearly was not "maritime employment," and thus he
fails the status prong of LHWCA coverage.

He additionally fails the "situs" prong because he was upon a fixed platform that is treated as an "artificial island." See Rodrique v. Aetna Cas. & Sur. Co., 395 U.S. 352, 360 (1969). Such an artificial island fails to meet the LHWCA's situs prong. Thibodeaux v. Grasso Prod. Mgmt., 370 F.3d 486 (5th Cir. 2004). See also Miles v. Delta Well Surveying Corp., 777 F.2d 1069, 1071 (5th Cir. 1985) (contract employee working on fixed installation within Louisiana coastal waters failed "status" prong because not engaged in maritime employment and failed "situs" prong because not working on the continental shelf). The mere fact that Linear mistakenly paid LHWCA benefits to Plaintiff does not change this legal classification. Because Plaintiff is not covered under the LHWCA, the Louisiana workers' compensation scheme is an available means of recovery, and state law regarding the statutory employer immunity is applicable to the instant case.

## C. Statutory Employer Status

Given that state law applies, the next issue is whether Defendant Apache qualifies for the Louisiana statutory employer tort immunity. The LWCA generally limits an employee injured in an accident while in the course and scope of employment to the recovery of workers' compensation benefits as his exclusive remedy against his employer. Griffin v. Wickes Lumber Co., 840

16

So. 2d 591, 594 (La. App. 1st Cir. 2002).  Thus, an employee is precluded from bringing a lawsuit in tort not only against his direct employer, but also against his statutory employer.  LA. REV. STAT. ANN. § 23:1061.  A statutory employer relationship exists when a "principal"[6] undertakes to execute any work, which is a part of his trade, business, or occupation, and contracts with another party who executes the principal's work.  LA. REV. STAT. ANN. § 23:1061(A)(1).  The principal is the statutory employer vis-a-vis the contractor's employees and is granted the Louisiana workers' compensation scheme's exclusive remedy protections.  Id.

For the work to be considered part of the principal's trade, business, or occupation, it must be an integral part of or essential to the ability of the principal to generate its goods, products, or services.  Id.  Further, for the statutory employer relationship to exist between the principal and the contractor's employees, there generally must be a written contract between the principal and the contractor that recognizes the principal as a statutory employer.  Id. § 1061(A)(3).  In this case, the MSC

---

[6] The parties do not dispute that Apache was a "principal" under the meaning of the LWCA.  See LA. REV. STAT. ANN. § 23:1032(A)(2) (defining "principal" as "any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.").

clearly establishes that Apache is a principal who has contracted
with Linear; the parties dispute whether the work performed by
Linear is integral or essential to Apache's ability to generate
its goods, products, or services.  However, because the MSC is a
written contract that recognizes a statutory employer
relationship, there is a rebuttable presumption that Apache is
Plaintiff's statutory employer.  <u>See</u> <u>id.</u>  Further, "[t]his
presumption may be overcome only by showing that the work is not
an integral part of or essential to the ability of the principal
to generate that individual principal's goods, products, or
services."  <u>Id.</u>  Therefore, Plaintiffs must demonstrate that
Plaintiff Steven English's work for Linear was not integral or
essential to Apache's ability to generate its production and
transportation of oil and gas.

    Louisiana jurisprudence demonstrates that rebutting the
presumption of a statutory employer relationship is difficult
because the words "integral" and "essential" are liberally
interpreted, in keeping with the Louisiana Legislature's intent.
<u>Jackson v. St. Paul Ins. Co.</u>, 897 So. 2d 684, 689 (La. App. 1st
Cir. 2004).  In <u>Jackson</u>, the court found that the construction of
a new plant for a principal whose business is processing
chemicals for transportation and sale is essential to the

principal's ability to generate its goods, products, and services; because without a facility, it would be virtually impossible for the principal to process chemicals.  <u>Id.</u> at 688. Additionally, refurbishment of a refinery has been held to be essential and integral.  <u>See Applegarth v. Transamerican Refining Corp.</u>, 781 So. 2d 804 (La. App. 5th Cir. 2001).  However, these are obvious outcomes.  In the instant case, Plaintiff was not involved in new construction or substantial renovation of Apache's oil platform, but rather everyday maintenance tasks. Still, the liberal construction given the statute has led one court to find that provision of catering services onboard a fixed platform is essential to a platform owner's ability to operate its compressor station on a 24-hour basis.  <u>See</u> <u>Johnson v. Tenn. Gas Pipeline Co.</u>, 99 F. Supp. 2d 755, 758-59 (E.D. La. 2000).  If feeding workers is essential, maintenance of the actual equipment that allows oil and gas production and exploration is certainly also essential.

The Court finds that Apache is Plaintiff Steven English's statutory employer.[7]  Defendant has presented the affidavit of

---

[7] Because the exclusivity of the workers' compensation remedy also applies to an employee's dependents such as Plaintiff Ginny English, Apache's defense is available against both Plaintiffs in this case.  <u>See</u> La. Rev. Stat. Ann. § 23:1032 (stating that the workers' compensation regime, regarding an employee's injury, applies to both the employee and his dependents).

Apache's assistant foreman, who asserts that Apache cannot successfully produce oil and gas via this platform without Linear's work in maintaining and repairing instruments, controls, and electronics.  Apache needs the equipment on its platforms to function properly to be able to engage in its line of business. Linear executes such maintenance and repair of instruments, gauges, electronics, and various other equipment.  It is clear to the Court that Apache is Plaintiff's statutory employer by virtue of Linear's admitted role in keeping Apache's day-to-day operations afloat.  In addition, Defendant benefits from the rebuttable presumption of statutory employment by virtue of the MSC's provision that Apache is the statutory employer of Linear's employees who work on Apache's platforms.

Plaintiffs have not rebutted the presumption of Defendant's statutory employment status.  In fact, Plaintiff does not even submit any evidence to contradict Apache's assistant foreman's affidavit affirming the integral nature of Linear's work to Apache's ability to produce its goods and services.  Plaintiff does cleverly argue that Mr. English was not performing work that was essential or integral at the time of his accident, specifically, that he was on his way to a pre-job safety meeting, and that job safety is a generic requirement in all occupations.

However, Plaintiffs cite no case or statute even suggesting that for a statutory employer immunity to obtain, the alleged statutory employee must at the time of the accident be performing work that is essential.  Rather, the statute only requires that the injured employee have been employed to execute the work that is essential.  See LA. REV. STAT. ANN. § 23:1061(A)(1).  There is no dispute that Mr. English was hired by Linear to perform such work for Apache.  Further, Apache's assistant foreman's affidavit states that Linear employees continually remain and are housed on the platform, and that Apache expects shift changes to be efficient and seamless.  Plaintiffs present absolutely no rebuttal evidence to dispute the fact that at the time of Mr. English's taking over the shift for Mr. Langlinais, this shift change was essential so that Linear could provide uninterrupted maintenance services that were essential to Apache's oil and gas business.

Plaintiffs also cite Prejean v. Maint. Enterprises, Inc., 8 So. 3d 766 (La. App. 4th Cir. 2009), for the proposition that the MSC's statutory employer provision is null because it fails to preserve the solidary liability of Linear and Apache as Plaintiff's employers.  While true that the court in Prejean stated that to create the presumption of a statutory employer

relationship, "it is not sufficient to designate a party as a statutory employer if the terms of that contract allow that party to escape the liability inherent in such a designation," id. at 773, the Court finds no evidence that the MSC attempts to absolve Apache of solidary liability.[8]  The court in Prejean expressly stated that none of its discussion precluded "either the statutory employer or the direct employer from contracting as between themselves rights of contribution or indemnification." Id. at 774.  Thus, Section 11 of the MSC, which requires Linear to indemnify Apache for any liability to Linear's employees, is not prohibited by the rule espoused in Prejean.  Indeed, the Louisiana act expressly provides that "nothing in this Section shall prevent any arrangement between the employers for different distribution, as between themselves, of the ultimate burden of such payments."  LA. REV. STAT. ANN. § 23:1031(B).[9]  Therefore, MSC Section 12, which requires Linear to name Apache as an additional

_____

[8] "Solidary liability" is a Louisiana civil law concept applicable to parties with an obligation for which each is entirely liable.  See LA. CIV. CODE art. 1794 ("An obligation is solidary for the obligors when each obligor is liable for the whole performance.").

[9] Further, the parties' inclusion of an indemnity provision merely contracts for what the LWCA already allows.  See LA. REV. STAT. ANN. § 23:1063(A) ("[T]he principal contractor shall be entitled to indemnity from his subcontractor for compensation payments paid by the principal contractor on account of an accidental injury to the employee of the subcontractor.").

insured on Linear's workers' compensation insurance policies, does not attempt to eliminate solidary liability.  Rather, as permitted by § 23:1031(B), the MSC merely distributes the *ultimate* burden of payments.  The MSC contains no provision requiring an injured employee to first pursue his actual employer before pursuing recovery against the statutory employer—which was the frowned-upon proviso in <u>Prejean</u>.  The Plaintiffs point to no other part of the MSC that would allegedly relieve Defendant Apache of its solidary obligation to Mr. English.

Because Plaintiffs would bear the burden of proof regarding liability at trial, Apache as Movant has borne its summary judgment burden by demonstrating insufficient evidence of liability, namely, that Apache is Mr. English's statutory employer.  The burden having shifted to Plaintiffs, they have failed to set out specific facts showing a genuine issue exists.  Thus, Defendant Apache has clearly demonstrated that it is entitled as a matter of law to judgment in its favor.

For the foregoing reasons, **IT IS ORDERED** that Defendant's **Motion for Summary Judgment (Rec. Doc. 43)** is **GRANTED**, dismissing Plaintiffs' claims **with prejudice.**

New Orleans, Louisiana this 3rd day of August, 2011.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE